## Daniel J. Campau

### v.

## Henry V. Bemis.

*Trover — Paintings — Demand — Conversion — Estoppel — Evidence—*
*Instructions.*

1. An instruction should not state that which it is the duty of the jury to find from the evidence.

2. A defendant relying upon the refusal of the trial court to instruct the jury at the close of the plaintiff's case to find in his behalf as erroneous, should not enter upon his defense. Having done so, the verdict must be tested by the entire evidence in the case.

3. The delivery of a list of office fixtures to the purchaser of stock in a corporation, subsequent to the sale, will not estop the seller, in the absence of an understanding upon the subject, from recovering articles named therein upon the ground that they were not included in the sale, such list forming no inducement for the purchase.

4. In an action of trover brought to recover the value of certain paintings, this court holds that they were the property of the plaintiff, that the same were demanded by him, and that defendant's orders to an employe to retain them amounted to a conversion.

[Opinion filed December 2, 1889.]

Appeal from the Circuit Court of Cook County; the Hon. Frank Baker, Judge, presiding.

Messrs. Dupee, Judah & Willard, for appellant.

" A demand and refusal is only evidence of a conversion; before it is entitled to any weight whatever, it must be proved that the party making the refusal had it in his power to deliver up the article demanded. And a mere qualified refusal, if the grounds for not delivering the property are reasonable, will not amount to a conversion; as where the party making the refusal is ignorant who is the real owner of the property, and requires to be satisfied respecting the ownership, or, where a servant has received the custody of property from his master, and requires that his master be applied

to before he delivers it up." 3 Phillips on Ev., *541; Alexander v. Southey, 5 Barnewall & Alderson, 247.

In the above case, goods, the property of plaintiff, had been, by the servants of an insurance company, carried to a warehouse of which the defendant, a servant of the company, kept the keys. The defendant, on being applied to by plaintiff to deliver up the property, refused to do so without an order from the company. Held, that this was not such a refusal as amounted to a conversion.

Abbott, C. J., said: "The question is, whether the refusal of the servant to deliver the goods in question amounts to a conversion of the property. This, therefore, is the case of a conversion arising by construction of law. I think the refusal in this case, not being an absolute refusal, was not sufficient evidence of a conversion, and that the learned judge was right in so considering it and in directing a verdict for defendants."

Holroyd, J., said: " If we were to hold this refusal to be a conversion, it would go this length, that if a person went to call at a gentleman's house, and asked his servant to deliver goods to him, and the servant were to refuse to do so unless a previous application was made to his master, it would amount to a conversion on the part of the servant. In this case the goods came into the defendant's possession lawfully, and the refusal is only until an order is obtained from the defendant's employers. The case of Mires v. Soleboy, 2 Modern, 242, is in point. There the servant refused to deliver back some sheep which were on his master's land, and it was held to be no conversion on his part."

In 2 Greenleaf's Ev., paragraphs 644–5, the rule is stated as follows: "Section 644: Where the circumstances do not of themselves amount to an actual conversion, it will be incumbent on the plaintiff to give evidence of a demand and refusal at any day prior to the commencement of the action, and also to show that the defendant at the time of the demand had it in his power to give up the goods. But the demand and refusal are only evidence of a prior conversion, not in itself conclusive, but liable to be explained and rebutted by evidence to the contrary."

Campau v. Bemis.

" Section 646: Even an absolute refusal is not always evi-
dence of conversion. Thus, where the plaintiff's goods were
attached in the hands of his bailee, who on that account
refused to deliver them up, it was held no conversion. So it
is where the possessor of goods refuses to deliver them up until
some ownership is shown in the claimant; or until some other
condition lawfully imposed by him is complied with; as where
a servant having the custody of goods apparently his master's,
refuses to deliver them without an order from his master."

In the case of Carroll v. Mix, 51 Barber, 212, it is held:
" Where a bailee of goods absolutely refuses to deliver them
to the owner on demand; or denies his right to them; or
assumes to himself be owner; or interposes an unreasonable
objection to deliver them; or exhibits bad faith in regard to
the transaction, a conversion of the property may be inferred.
But where the defendant received goods from B, without
knowing who was the owner, but having every reason to sup-
pose B to be the owner, and, on demand being made by a
third person claiming to be the owner, did not set up any
claim to them, or dispute the claimant's right, but stated in
substance, that he did not know the claimant was the owner;
that the property was left by B, and that he desired the order
of his father, or B, before delivering the same; or an oppor-
tunity to confer with his father in regard thereto: Held, that
this was not such a refusal as amounted to a conversion of the
goods."

In Monnot v. Ibert, 33 Barb. 24, Justice Emott remarks:
" It is true the authorities require that the refusal should be
absolute, and not evasive. But this means that it should not
be a mere excuse or apology for not complying immediately,
as when the demand is made by an agent, and the other
party wishes to verify his authority before complying, or of
an agent who must consult his principal. If such excuses
are made in good faith, they will not amount to a refusal for
which trover will lie. There must be an absolute denial of
the plaintiff's right, or the qualifications must be unreasonable
or made in bad faith." See, also, Holbrook v. Wight, 24
Wend. 169. Cowen, J., at page 177, remarks: " So of any

reasonable excuse made in good faith at the time, the goods being evidently kept with a view to deliver them to the true owner.    It is then the business of the plaintiff to obviate the objection as far as may be reasonably required."    The case at bar is clearly within the principle established by the authorities cited, and the rule thus adopted is reasonable and just, and the plaintiff should have acted upon it, instead of exhibiting such inexcusable haste in commencing an action against an innocent party.

To constitute a refusal upon demand evidence of conversion, it must be unconditional, or with a condition which the party had no right to impose, and not a reasonable excuse.    Kinne v. Dale, 14 Ill. App. 311.

The demand in this case was not for the pictures, but that Walker box and ship them to plaintiff, and was a demand which plaintiff had no right to make, and to which Walker nor the company were under any obligations to concede.    An absolute refusal to comply with it would have been no evidence of conversion.


Messrs. Dow & BURNHAM, for appellee.

Simple refusal to deliver goods rightfully in defendant's possession would not be an act of trespass, but such refusal might furnish ample grounds to sustain an action of replevin for detention, or trover for their value.    Isaac v. Clark, 2 Bulst. 310, sometimes cited as Thimblethorp case.

An unlawful taking or control of the goods of another is sufficient to sustain an allegation of taking, without proof of an actual forcible dispossession of plaintiff.    Haythorn v. Rushforth, 19 N. J. L. 160; Stewart v. Well, 6 Barb. 80; Neff v. Thompson, 8 Barb. 215; Wheeler v. McFarland, 10 Wend. 322; Barrett v. Warren, 3 Hill (N. Y.), 349.

Demand is necessary in order to afford an opportunity to defendant to restore goods to rightful owner or to make satisfaction so that he should not be subjected to costs of suit. Pringle v. Phillips, 5 Sandf (N. Y.), 157; Pierce v. VanDyke, 6 Hill, 613.    In this case appellant is not entitled to a demand.

Where a machine was delivered to one through mistake of

Campau v. Bemis.

expressman, and he encouraged delivery and afterward made repairs upon it, the taking was wrongful and no demand was necessary. Purvis v. Moltz, 5 Rob. (N. Y.), 658.

When action is for wrongful taking, proof of an actual or constructive wrongful taking by defendant will be sufficient without proof of demand. Stillman v. Squire, 1 Denio, 328; Oleson v. Merrill, 20 Wis. 462; Cummings v. Vorce, 3 Hill, 282; Lewis v. Masters, 8 Blackf. 245.

The law will presume from proof of wrongful taking, that the goods continue in the taker's possession, and that he remains of the same purpose of mind in which he committed the wrong. Paul v. Luttrell, 1 Col. 320; Johnson v. Howe, 2 Gilm. 342.

When defendant has notice of plaintiff's rights any act done for the purpose of defeating them will amount to a conversion. Kennet v. Robinson, 2 J. J. Marsh. (Ky.) 84, holds an assumption of ownership sufficient.

Actual possession of the property, or the exercise of some control or dominion over it or interference with it by defendant, may amount to a conversion. Presley v. Powers, 82 Ill. 125.

When the defendant sets up a claim of ownership, this claim is inconsistent with any hypothesis that he would surrender them on demand and will obviate necessity of proving demand. Seaver v. Dingley, 4 Greenleaf (Me.), 207; Smith v. McLane, 24 Iowa, 322; Newell v. Newell, 34 Miss. 485; Cranz v. Kroger, 22 Ill. 74; Perkins v. Barnes, 3 Nev. 557; Pierce v. Van Dyke, 6 Hill, 613; Homan v. Laboo, 1 Neb. 207.

Defendant's pleas of *non cepit* and *non detinet* concede right of property in plaintiff. VanNamee v. Bradley, 69 Ill. 299; McGavock v. Chamberlin, 20 Ill. 219; Yott v. People, 91 Ill. 11.

If a party refuse to deliver goods to the owner on the ground that they belong to himself, or that they belong to a third person, this refusal amounts to a conversion. 2 Will. Saund. 47 f, notes; Baldwin v. Cole, 6 Mod. R. 212; Wilson et al. v. Anderton, 1 Barn. & Adol. 450; Coffin v. Anderson, 4 Blackf. R. 406–7.

MORAN, J.   This was an action of trover to recover the value of three oil paintings, portraits respectively of the famous horses "St. Julien," "Bonesetter" and "Little Brown Jug." There was a verdict for the plaintiff for $1,500, and this appeal is prosecuted from the judgment entered thereon.

For the appellant it is contended, that the pictures did not belong to appellee, but to the Chicago Horseman Newspaper Company, a corporation of which he was president. It is very clear from the evidence, that the pictures were appellee's at the time they were placed by him in the office of "The Horseman" company, and there is no evidence whatever tending to show that he ever sold them to said company. He was the chief stockholder and president of "The Horseman" at the time he hung the pictures in the office, and they remained in the office after he sold out his stock in the company to appellant.

At the time of the said sale of stock, which was made in Chicago, appellant asked for an inventory and appellee telegraphed to New York for an inventory of the articles there, and one was sent in which the oil paintings in question were included, which list or inventory was afterward handed by appellee to appellant; but it satisfactorily appears from the evidence that such list was not given to appellant till after the stock was transferred and paid for, and that the supposed inference that might be drawn from such list, that the paintings were part of the assets of the corporation, formed no inducement to appellant to purchase, and therefore the delivery of such list constituted no estoppel as against appellee.

The finding of the jury, that the pictures were the property of appellee is, in our opinion, clearly supported by the evidence.

It is strenuously contended, however, that there is no evidence of a demand upon appellant for the property, and no evidence of an actual conversion by him. The evidence is in substance that appellee, when in the New York office of "The Horseman" company, requested one Walker, who was the manager and editor of the newspaper, and who was in charge of

the office, to send the pictures to him in Chicago; to have them boxed up and sent; and Walker promised that he would have them boxed up and sent the next day. The next day appellant was in the office of the company, and he has related in his evidence what occurred. "Walker, the agent, said to me, 'By the way, Mr. Bemis was in here yesterday or the day before, and asked me to send him those three oil paintings, and he also requested me to send two other crayon pictures; but I reminded him some time ago he had given me those crayons, and he said, "Well, that is all right, but send those paintings." What shall I do about them?' I replied that he should not send any property which belonged to the company without an order from its executive officer, the president."

He further testified, speaking of the New York office: "The desks there belong to the company, and the carpet and decorations and fixtures and furniture. I claim that these three pictures belong to the company. They always considered it so. That is the reason why I said to Mr. Walker what I did say. I thought it my duty to retain those pictures for the benefit of the company."

This evidence clearly shows that appellant, in directing Walker not to send the pictures, was in fact and intent exercising a dominion over them in exclusion of appellee's right and inconsistent with appellee's ownership of them.

"The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion." Leptrot v. Homes, 1 Kelly (Ga.) 381.

A party may be guilty of a conversion by dealing with or claiming property in goods as his own, or even by asserting the right of another over them. If appellant knew that appellee claimed the pictures, and he intended to prevent his obtaining possession of them by directing that they should not be sent to him, the reason for his order being that he regarded them as not appellee's property, but as the property of the company, whose rights he deemed it his duty to assert, then his direction not to deliver them would be evidence of a conversion.

" A wrongful intent is not an essential element of the con-
version.    It is enough in this action, that the rightful owner
has been deprived of his property by some unauthorized act
of another, assuming dominion or control over it."    Boyce v.
Brockway, 31 N. Y. 490.

" A very slight agency or interference will make one liable
in trover."    Farrar v. Chauffetcte, 5 Denio, 527; see Follett
v. Edwards, 30 Ill. App. 386, and cases there cited.

Appellant argues that at the close of the plaintiff's case
there was no evidence before the jury to prove conversion,
and the instruction then requested by appellant, that the jury
should find for the defendant, should have been given by the
court.    If the appellant desired to rely on that refusal as error
he should have stood upon it, and should not have entered
upon his defense.    The verdict must be tested by the entire
evidence in the case, and so tested, the finding that there was
a conversion, is, as we have already seen, supported.

The other instruction, the refusal to give which is assigned
as error, assumes to state to the jury the effect of appellant's
direction to Walker, instead of leaving that question to the
jury to find, and was properly refused.

There is no error, and the judgment of the Circuit Court
must therefore be affirmed.

                                        *Judgment affirmed.*