CHICAGO & GREAT WESTERN RAILROAD COMPANY

v.

CARL WEDEL.

*Real Property—Damage to—Location and Operation of Railroad— Theory of Suit Adopted by Parties—Effect of on Appeal—Immaterial Error—Evidence—Instructions.*

In an action brought by an adjacent property owner to recover damages suffered through the location and operation of defendant's railroad, where the suit was tried upon the theory, adopted by both parties, that the appellee was entitled to recover in this suit the diminution, if any, in the value of his premises by the location and operation of defendant's road, *held*, that on appeal the appellant could not object that that was not the correct theory of the case.

[Opinion filed April 9, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Messrs. H. S. BOUTELL and K. K. KNAPP, for appellant.

Mr. NEWTON A. PARTRIDGE, for appellee.

GARY, J. On this record it appears that the appellee owns a lot, twenty-four feet wide, with a two-story and basement dwelling house upon it, fronting south on Rebecca street, and the appellant has a two-track railroad in operation in the street, the north track of which is nine feet south of the southeast corner and touches the southwest corner of the lot. The suit was tried upon the theory, adopted by both parties, that the appellee was entitled to recover in this suit the diminution, if any, in the value of his premises by the location and operation of the road. When the appellee rested his case, he had not proved that the appellant owned or operated the road; but the appellant supplied that omission, thereby waiving the motion to dismiss. Joliet Ry. Co. v. Velie, 26 N. E. R. 1086; Campau v. Bemis, 35 Ill. App. 37.

A witness for appellee was asked, "And from the proximity of the premises to the railroad track can you tell whether the smoke and cinders and gases from passing locomotives would enter those premises—enter the house?" and he answered, "Yes, sir; very likely." The exception to this question is well taken, and if it were reasonably probable that the result could have been affected by the answer, it would be error. But the matter is of such common knowledge that it is impossible that the jury could have thought that answer of any consequence. The other complaint as to evidence is, that a witness for the appellant who had testified as to value, was not permitted to answer the question, ".Was that valuation based upon what you had been paying for similar property in the neighborhood?" There are divers valid objections to that question. First, it is leading; second, it leaves to the opinion of the witness what is similar property; and third, it lumps transactions which, though in detail admissible, must, if put in evidence, be so described that the jury may make the comparison and draw the proper inference.

The instructions given are as follows:

For appellee: "The question for the jury in this case is whether the construction and operation of the railroad con-

structed by defendant in Rebecca street, near the premises of defendant, damaged and depreciated the market value of the premises of the plaintiff. If from all the evidence you find and believe that the effect of the construction and operation of said road was to damage and depreciate the value of said premises in the market, you will find the amount the value of said premises was thereby depreciated, and find the defendant guilty, and award him as damages the amount of such depreciation in value."

For appellant: "The jury are instructed that they must find for the defendant unless they find that the construction and operation of the tracks of the defendant have caused the premises of the plaintiff to depreciate in market value. The jury are instructed that if they find from the evidence that the premises of the plaintiff will sell for more in the open market than it would if the tracks of the defendant had not been constructed and operated in the manner shown by the evidence, and that this result was caused by the construction and operation of the tracks of the defendant, then they should find for the defendant."

An instruction asked by the appellant and refused is: "The jury are instructed that if they find from the evidence that the construction and operation of the tracks of the defendant has caused a change in the best use to which the premises could be applied, and that the property is now worth more in the open market for the new use than it was before the construction of the road, then they should find for the defendant."

We have already said that the suit was tried upon the theory adopted by both parties, that the appellee was entitled to recover in this suit the diminution, if any, in the value of his premises by the location and operation of the road. That such theory was adopted by both parties is shown by the instructions they asked, and as to the appellant, it is further shown by the statement of the counsel of appellant on the trial, when offering evidence, viz., "bearing in mind always the language of the Supreme Court that in this suit he (the appellee) recovers once for all the damages

present and prospective." It is not open to the appellant now to say that that is not the right theory. Chicago F. & B. Co. v. Major, 30 Ill. App. 276; McMahon v. Sankey, 35 Ill. App. 341; Chicago v. Moore, 40 Ill. App. 332. The refused instruction is but a paraphrase of the second one given for the appellant. It was rightly refused. Daegling v. Ill. Vault Co., 33 Ill. App. 341, and cases there cited by counsel. The jury awarded the appellee $1,500 damages. The appellant endeavored to satisfy the jury that the premises were increased in value by becoming adapted to business, through the transportation facilities. But this was upon the very uncertain hypothesis that they would be used in connection with adjoining property. That for a residence it is inconvenient to have a railway operated almost across the threshold seems obvious.

There is no ground for reversing the judgment, and it is affirmed.

*Judgment affirmed.*

WATERMAN, P. J., dissenting. The declaration in this case was substantially as follows: " For that whereas, the plaintiff before and at the time of the committing of the grievances hereinafter mentioned by the defendant was and from thence hitherto has been, and still is, possessed as in fee of the premises, known, etc., which said premises are improved among other buildings by a certain dwelling house, in which said plaintiff resides with his family, and part of which house the plaintiff lets for him to divers persons for a rental paid to him by them in that behalf, and the plaintiff says that he has been and is entitled to the quiet enjoyment, benefit and use of the said premises and improvements, and every part thereof, but that the defendant well knowing the premises, but contriving and wrongfully intending to injure the plaintiff and disturb him in the convenient and quiet use of the said dwelling house and of the said premises with the appurtenances, heretofore, to wit, on or about the 1st day of January, A. D. 1888, constructed, built and threw up an embankment in front of said dwelling

house upon Rebecca street, on which said lot and said premises fronts and is located, caused to be constructed, built and laid down certain railroad tracks in and upon the said embankment so located upon said street, and from thence hitherto said defendant has run its locomotive engines, operated by steam, and its train of cars along and upon the said track and embankment in said street immediately adjoining said premises of plaintiff, thereby causing and creating great jarring, shaking and shocks of and to the said dwelling house, and also causing and creating great noises and disturbances which interfere with the said plaintiff in the use and enjoyment of his said dwelling house, and also throwing, casting into and upon the said dwelling house and premises, and causing to fall upon said premises and to pass into said dwelling house, dust, dirt, cinders, ashes, smoke and noisome vapors, and further, the defendant, by means of the said embankment has prevented from flowing and passing away from the said lot and premises of the plaintiff upon said street, which is servient thereto, the water which falls upon the said lot and premises, and by means of said embankment has prevented the water which falls upon the adjacent premises and streets from passing away, but has caused the same to flow into and upon the said premises and dwelling house of the plaintiff, and has caused the said water so prevented from running away, from his lot and premises, and so, as aforesaid, caused it to flow and run upon his said lot and premises, to stand and become stagnant upon his said premises, and in and under his said dwelling house, and thereby has caused said stagnant water to generate noisome, offensive and deleterious gases and vapors, which have passed through and into said dwelling house of the plaintiff, and also by means of said embankment the defendant has entirely and absolutely cut off access to the said premises and dwelling house of the plaintiff along and upon and by means of said Rebecca street, which is the only street giving access to the premises of the plaintiff, so that the plaintiff is altogether and entirely prevented from having access to the front of

his premises by means of said street, and which access the plaintiff was and is entitled to have and enjoy without hinderance or obstruction by means of said embankment and railroad of the defendant.

"And the plaintiff says that by means of the premises he has been greatly hindered in the use and enjoyment of his said premises and dwelling house, and that the rental value of said premises which before the committing of said grievance had always been rented, has been greatly depreciated and has been nearly destroyed, and said dwelling house is often vacant and unrented because tenants refuse to submit to said nuisances caused by the defendant therein, and that by means of the water as aforesaid being conveyed to and flowing upon his said lot and being so prevented from flowing away therefrom, and the noisome and offensive vapors thereby generated, great loss, hurt and damage has accrued to the health and comfort of the plaintiff and his family in the use and enjoyment of said dwelling house as the residence of the plaintiff and his family, and that by means of the dirt, cinders and smoke, ashes, dust and vapors and other offensive substances and odors caused by the use and operation of the said railroad to pass into and fall upon the said dwelling house and premises, he has likewise been greatly damaged and injured in the use and enjoyment of the said premises as aforesaid, and that by means of the noise, jarring, shaking and disturbance caused by the operation of said railroad by the defendant, the plaintiff is likewise greatly injured, hindered, obstructed and damaged in the quiet and peaceable enjoyment of his said dwelling house and the premises to which he was and is of right entitled.

"Wherefore the plaintiff says that he has incurred and sustained damages to the amount of $3,500 by means of the said wrongful acts of the defendant, wherefore he brings his suit," etc.

It is the rule in this State "that one may bring suit for the deterioration in value of real property from a nuisance, *alleging its permanency*, and that by such an action the

plaintiff consents to the continuance of the nuisance and accepts the judgment recovered as a compensation therefor." C. & E. P. R. R. Co. v. Loch, 118 Ill. 203–208. But it does not follow from this that by such a recovery the right to maintain a negligent or dangerous method of construction is secured. The damage for which a recovery is had in an action alleging the creation of a nuisance of a permanent character by a railroad is, if the nuisance be such as necessarily results from the construction or operation of the road, for such injury as results from a proper construction and operation of the road; for injuries which result from an improper construction or operation, successive actions may be maintained from time to time as injuries from such cause occur. O. & M. Ry. Co. v. Wachter, 123 Ill. 440.

From this it necessarily follows that in an action against a railroad alleging a permanent nuisance, damage which is the result of an improper construction can not be taken into account. A recovery gives no right to maintain such improper construction; a subsequent action may be maintained for an injury to property, so caused, and consequently it should not be considered in an action for a permanent nuisance. In the present case, the declaration contains no allegation that the nuisance is a permanent one, nor any that the road is improperly constructed or operated. The acts of the defendant set forth and complained of are many of them manifestly not such as are necessarily or probably permanent in their character.

Some of the acts set forth, as the causing of water to flow upon and back up on, stand and become stagnant, and to generate noisome, offensive and deleterious gases upon the premises of the plaintiff, are such as the defendant could not acquire or the plaintiff sell in the city of Chicago, to any one; nuisances which the defendant can not acquire a right to maintain in a great city. Nor is the "loss, hurt and damage which has accrued to the health and comfort of the plaintiff and his family in the use and enjoyment of said dwelling house" a permanent injury, or an injury to the property. For whatever damage has been sustained from loss of health by the plaintiff or his family in conse-

quence of any wrongful acts of the plaintiff, they or he may maintain other actions. The declaration is in no sense for a permanent nuisance, but for wrongs for which successive recoveries may be had. Its concluding averment, that the plaintiff is likewise greatly injured, hindered, obstructed and damaged in the quiet and peaceable enjoyment of his dwelling house, is a statement of past injuries personal to the plaintiff and not of a loss by a permanent depreciation in the value of his property. Nevertheless the plaintiff tried his case upon the theory that he had sued and was to recover for a permanent injury; the court refused to take the case from the jury, and the verdict and judgment are manifestly for a permanent nuisance.

It seems to me that upon such a declaration the judgment in this case ought not to stand. The rule that the *allegata* and *probata* must correspond, is as well established as any rule can be; it is based upon most substantial reason; its maintenance is essential to the administration of justice, and to allow it to be frittered away is to destroy the value of our whole system of written pleadings. That a declaration upon a promissory note may be filed and under it a judgment in ejectment be had, is to my mind abhorrent. So too, that one may sue and declare for injuries to his person, to his health, or comfort, and have a recovery which establishes a right to destroy his home, is a thing which I am unable to reconcile with an orderly or useful administration of the law. The party who sues for a nuisance to his property, in its nature permanent, caused by one who has no legal right to maintain such nuisance, has a right to elect whether he will treat the injury as permanent and so recover once for all the entire damage, past and prospective, or by such successive actions compel an abatement of the unlawful nuisance. He can not be compelled by the creator of the nuisance to either submit to it or to sell his property for what a jury may give him. Holmes v. Wilson, 10 A. & E. 503; Thompson v. Gibson et al., 8 M. & W. 281; Whitehouse v. Fellows 10 C. B. (N. S.) 765; Esty v. Baker, 48 Me. 495; C. & O. Canal Co. v. Hitchins, 65 Me. 140; Bare v. Hoffman, 79 Penn. St. 71; Thompson v. Morris

Canal & Banking Co., 17 N. J. L. 480; Thayer v. Brooks, 17 Ohio, 489. If the plaintiff does not see fit to allege a permanent nuisance, neither the trial court nor the defendant ought to be permitted to turn the action into case for a permanent depreciation, and thus compel him to submit forever to what he has a right to have removed. So in the case of an action against a railroad. Things which would otherwise be nuisances, it may maintain; as an abatement of these can not be compelled, only an action for a permanent injury to property is maintainable; but for things which the road has no right to continue, as an improper construction, or evils resulting therefrom, successive actions may be brought, and an abatement of the nuisance forced. By what is alleged in the plaintiff's declaration, can the character of his action and the right he will insist upon, alone be determined ? And he can not be driven to the assertion of one right if he prefers to claim under another. Whatever may have been the evidence adduced in the present case, the pleadings ought to be such as to indicate the nature, effect and scope of the judgment rendered. Where valuable rights to real property are lost and acquired under legal proceedings, the record of the cause ought to be such that the facts established by and the rights acquired under the judgment will not rest in the fleeting memory of witnesses, but will appear from an inspection of the judgment roll. Wheeler v. Reed, 36 Ill. 81–85; Guest et al. v. Reynolds, 68 Ill. 478–480–488; Claycomb v. McCoy, 48 Ill. 110; C. & A. Ry. Co. v. Taylor, 40 Ill. 280; First Baptist Church of Chicago v. Hyde, 40 Ill. 150–154.

If the case of O. & M. Ry. Co. v. Wachter, is to be followed, I see no reason why the plaintiff may not bring successive actions for the flooding of his premises shown in the present case; there was no evidence tending to show that it was even reasonably necessary to construct the road so as to cause the water to stand upon plaintiff's premises; yet for damages that have been and will be so caused a recovery has been had.

The judgment ought, I think, to be reversed and the cause remanded.