# HUBBARD *v.* PERLIE.

---

PLEADINGS; DAMAGES; OPINION EVIDENCE; ASSAULT AND BATTERY; CHARGE TO JURY; EXCEPTIONS, MANNER OF NOTING.

1. Where the declaration in an action for damages for an assault and battery is sufficient, damages accruing as the result of the injuries received down to the time of the trial are usually recoverable; and a declaration, although inartificial, is sufficient to warrant the recovery of such damages, where, after stating that the plaintiff suffered pain from the time of the injuries down to the filing of the declaration, it also states that the pain still continues to exist.    (Following *Washington & G. R. Co.* v. *Patterson,* 9 App. D. C. 423.)

2. It is not error to admit testimony by the plaintiff in an action for damages for an assault and battery, that she had her back cauterized for the ailment resulting from the injury, the statement not being in the nature of an opinion, but rather an incidental statement of fact.

3. Where the plaintiff, a woman, in an action for damages for an assault and battery, testifies that the defendant struck her in his house while she was there peaceably removing her furniture, and there is no evidence to show that she committed an assault on the defendant or his

wife, who was present, that would justify the defendant's laying violent hands on her, there is no error in so instructing the jury as matter of law; nor is there any error in a charge to the jury, in such a case, that the plaintiff had the right, under the defendant's own evidence, to remove her furniture in a quiet, peaceable manner, when such a charge is supported by the testimony.

4. Abuse, that is to say, incivility, in talking, by one woman to another, is not sufficient to justify the latter's husband in committing an assault and battery upon the former.

5. A charge to the jury will not be held erroneous and the judgment reversed because of an obvious clerical error in the stenographer's report of the charge, where it appears elsewhere in the charge that the jury was correctly instructed.

6. The practice of noting exceptions to certain paragraphs of the trial court's charge to the jury, indicated by letters "A," "B," etc., on the margin, and thereafter printing the same in capital letters, is not one to be commended, and exceptions so noted will not be considered.

No. 1469.   Submitted April 12, 1905.   Decided May 2, 1905.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury in an action to recover damages for an alleged assault and battery.                                 *Affirmed.*

The COURT in the opinion stated the case as follows:

The declaration in this case was filed by the appellee, Rebecca R. Perlie, as plaintiff, on October 13, 1902, to recover damages for injuries received from an assault and battery committed by the defendant, Jerome Hubbard, on October 1, 1902.

After a statement of the facts constituting the assault, the declaration alleged that, by reason of the wounds and injuries so received, plaintiff "became and was sick, disordered, and shocked as to her nervous system, and so remained and continued for a long space of time,—to wit, for the space of the number of days intervening between the inflicting of said blows and committing of the said assault, until the filing of this declaration,—during all of which time the said plaintiff suffered and underwent great pain which still continues to exist, and

which caused said plaintiff to pay and expend money in and about endeavoring to be cured of the wounds, bruises, sickness, soreness, lameness, and disorder, and nervous affection, aforesaid, occasioned by the assault aforesaid, to the great damage and injury of the said plaintiff. Wherefore the said plaintiff claims that she is injured and has sustained damages to the amount of $10,000, which she claims, besides costs."

The evidence on behalf of the plaintiff tended to show: That she had occupied the house of the defendant, as a tenant, for one year ending September 1, 1902. That her niece lived with her, and defendant remained in the house, occupying a room reserved for that purpose in the lease. That prior to September the defendant married the said niece, and thereafter notified plaintiff to vacate the house. That she did so, leaving part of her furniture to be called for when wanted. That on October 1, she went to the house with a wagon to remove said furniture. That she was admitted to the house, and defendant's wife met her in the parlor. That the latter telephoned to defendant to come home. That she undertook to take a table from a room upstairs, when defendant's wife seized it to prevent its removal. That defendant came in unobserved by plaintiff, and seized her and "slammed her against the sharp edge of the door." That she became unconscious, but did not fall, and said to defendant, "you have taken the law in your own hands." That defendant replied: "Damn the law, I will break your neck downstairs." That he then slammed her against the other side of the door. That she remembered nothing thereafter until she went into the street. That she re-entered the house and fell in a rocking chair, and defendant brought her a glass of water. That defendant said, "Let this blow over;" to which she replied, "This is the biggest mistake of your life." That she returned home, —suffered intensely; and was confined to her bed for thirteen days. That she had suffered constantly since and had had surgical treatment. That she had her back cauterized for the ailment resulting from the injury. Defendant objected to this as an expression of opinion, and excepted when overruled.

Dr. Morgan testified for plaintiff that he had been called

within twenty-four hours, and saw bruises on plaintiff's right and left arm and on her right leg, above the knee. She complained of feeling sore, and of pains down her back and through the whole body. She was in a highly nervous, excitable state. The fee for his treatment and trouble would be about $250. In cross-examination, he said the bruises had every appearance of having been made within twenty-four hours. That plaintiff had subsequently called upon him and telephoned him often, and made herself a nuisance. That his estimate of fee would be chiefly for the annoyance given him, and not for actual treatment. That he had once treated plaintiff for bruises some five years before, but these had no connection with those treated in October, 1902. Objection was made to the evidence of charge for services, on the ground that it included those rendered after the declaration had been filed. This was overruled, and exceptions noted.

Dr. Ruffin testified to having been consulted by plaintiff some four or five months before the trial; found nothing the matter with her chest. There was a place on her collar bone, and there may have been a fracture there ten or twenty years before. She had a rapid pulse and was more or less nervous. Had been so ever since he had known her. He made no statement of any charge for services. Objection was also made to his testimony.

Dr. J. Ford Thompson, called by the plaintiff, testified that he had known her for years. That some years ago, prior to the assault, he had operated upon her for a tumor just below the knee joint. That she had consulted him some two months since for a painful spine. That he cauterized her, producing some ulcers. That her general condition did not appear to be bad. That in his opinion injury to the spine might have followed if she had been seized by a powerful man and thrown against the door-jam; but that such a condition would not always follow. That she had been under the treatment of a young physician who occupied the house. That he supposed his bill would be about $100, "if she is able to pay it." A like objection to this evidence was also made and overruled, with exceptions reserved.

Defendant's testimony tended to show that there had been considerable trouble with the plaintiff, and defendant had requested her to stay away from his house. That he had told her, when she got ready to move her furniture he would help her, but did not want her to come when he was not there. That defendant was telephoned for, went to the house, and found plaintiff there. That plaintiff was abusing his wife. That he told plaintiff to leave or he would call a policeman. That he said, "You must go out of the house; you cannot have this business around here." That in saying so, he put his hand on her arm. That she said: "You have put your hands on me; you have taken the law in your hands." That he said, "I will call an officer;" when she said: "I guess it is not necessary; I guess I will go." That she then went downstairs. That defendant went down and saw some chairs being loaded in a wagon. That he said, "Those chairs do not belong to you;" and took one and started to put it in the hall, when she took hold of it and said he could not have it. That she went away, but returned in a short time, and said she wanted to talk the matter over, and was excited and nervous and wanted some whisky. That there was no whisky, but defendant gave her some stomach bitters with a little water, which she drank. That she remained awhile talking, asked defendant's wife to forgive her, and then went away. That he did not use any violence; did not push her against the door. That he told her this thing could not go on and took hold of her arm without violence; was provoked and excited, but did not grip her arm. That he took her by the arm because she was trying to pull the table away from his wife at the time.

Defendant's wife testified to the abusive language of plaintiff, and to her message to her husband to come to the house because of it. She corroborated defendant's testimony as to the occurrences after his arrival.

Several witnesses were called, who corroborated defendant in some substantial particulars, and several others impeached plaintiff's reputation for veracity.

Defendant asked fourteen special instructions to the jury, all of which were denied. The court then charged the jury gener-

ally, and they returned a verdict for plaintiff for $600. From the judgment thereon defendant has appealed.

*Mr. Leo Simmons* for the appellant.

*Mr. E. B. Hay* and *Mr. F. H. Stephens* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. We are of the opinion that there was no error in permitting the introduction of the testimony tending to show medical treatment, after the institution of her suit under the declaration.

Where the declaration is sufficient, damages occurring as the result of the injuries received down to the time of trial may be recovered now usually. The strictness of earlier rules in that regard does not now generally prevail. Unquestionably the pleadings should give the defendant some notice of the claims against which he is called to defend; but liberal effect is given thereto. The declaration in this case is inartificial, and at first glance would seem to warrant the inference that the damages are confined to the period between the commission of the assault and the date of filing; but we think that the subsequent allegation that the pain and expense still continue to exist and cause expense are sufficient to extend the scope of the recovery. *Washington & G. R. Co.* v. *Patterson,* 9 App. D. C. 423, 434; *Ehrgott* v. *New York,* 96 N. Y. 264, 277, 48 Am. Rep. 622; *West Chicago Street R. Co.* v. *McCallum,* 169 Ill. 240, 243, 48 N. E. 424. An amendment of the declaration, when the objection was made, could have removed all possible ground of objection.

2. The statement of the plaintiff, that the ailment of the spine was the result of her injuries, was not in the nature of an opinion, but rather an incidental statement of fact; and we are not prepared to say that it was error to admit it, under all the circumstances.

3. Several exceptions were taken to the charge of the court, none of which appear to us to be tenable.

With a correct definition of assault and battery, the question whether one had in fact been committed by the defendant was left to the determination of the jury, together with the ascertainment of its results. There was no evidence tending to show that the plaintiff had committed an assault upon the defendant or his wife that would justify the laying of violent hands upon her, and there was no error in so instructing the jury, as matter of law. There was no error in charging the jury that the plaintiff had the right, under the defendant's own evidence, to remove her furniture in a quiet and peaceable manner. She was admitted to the house without objection, on the ground that the defendant was absent. It appears that defendant was readily reached by telephone. Part of the furniture had been taken out in a quiet and peaceable manner, and there is no evidence that the table she was about to remove when he entered, and at the time of the alleged assault, was not her property, which she had the right to take away. There is no doubt unfriendly feeling between the parties existed. Grant that plaintiff's conduct and remarks to defendant's wife may not have been altogether what they should have been, for he says that she was abusing, that is to say, not talking civilly to his wife, yet there was nothing to justify the violence with which he is charged. And whether or not he used such violence was left to the determination of the jury. In laying down the measure of damages, the jury were limited to the consideration of the pain and suffering of the plaintiff, and such expense as was necessarily caused thereby, between the time of the alleged assault and the time of trial. No recovery for future damages was permitted. A part of the charge recites: "There is no testimony going to show that she was requested not to come there unless he was present, but upon that there is a conflict of testimony, and that question is for you to determine, to find if he made the request." It is apparent that the insertion of the word "no" in this paragraph is a clerical error, probably of the stenographer, from what follows; and it is clear that the jury could not have been misled by

it. The practice pursued in this case of noting exceptions to certain paragraphs of the charge indicated by letters, "A," "B," etc., on the margin, and thereafter printing the same in capital letters, is one not to be commended. Had not the exceptions also contained a reasonably sufficient statement of the grounds thereof without resort to marginal notes and capital type, they would not have been considered.

4. Fourteen special instructions were prayed on behalf of the defendant, and errors have been assigned on their refusal.

Of these it is sufficient to say that some were clearly erroneous conceptions of the law; others had no application to the evidence, and such as had are embodied in the general charge.

Finding no reversible error in the proceedings on the trial, the judgment will be affirmed with costs. It is so ordered.

*Affirmed.*